# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUNCAN MILNER,<br>    Plaintiff,<br><br>        v.<br><br>TBWA WORLDWIDE, INC., et al.,<br>    Defendants. | CV 19-08174 DSF (AFMx)<br><br>Order GRANTING Plaintiff's Motion to Remand (Dkt. 11) and DENYING the Parties' Requests for Judicial Notice (Dkts. 12, 21, 26) |

      Defendants, TBWA Worldwide, Inc., TBWA Chiat Day Los Angeles, TBWA Chiat/Day, Inc., TBWA Chiat/Day, TBWA/Media Arts Lab, Omnicom Group, Inc., Omnicom Holdings USA Inc., Omnicom Management Inc., and Omnicom International Holdings Inc. (collectively, Entity Defendants) and Michael Claypool, Erin Riley, Sheri Thorburn, Troy Ruhanen, Chris Garbutt, and Elaine Stein (collectively, Individual Defendants) (collectively, Defendants) removed this case based on diversity jurisdiction. Dkt. 1 (Notice). Plaintiff Duncan Milner (Plaintiff) moves for remand. Dkt. 11 (Mot.).

# I. FACTUAL BACKGROUND

Plaintiff has been employed by the Entity Defendants since 1987, with a one-year hiatus in 1988. Dkt. 1-1 (Compl.) ¶ 9. Plaintiff's employment was terminated in 2019; he was 61. See id.

In around April 2015, Milner contacted Ruhanen about his disappointing yearly performance bonus, the stagnation of his base salary, and "no new stock grants since 2012." Id. ¶ 12(e). A week later, Ruhanen told Plaintiff that his decreasing bonus was due to the "economics of the network and the agency." Id. In around late 2016, Plaintiff was informed that he was being replaced by Brent Anderson, who was significantly younger than Plaintiff. Id. ¶ 12(f). In around 2017, Plaintiff was demoted to the Media Arts Lab\For Good agency, where his total annual compensation was cut in half and the number of employees reporting to him decreased from 40 to 50 to only six. See id. ¶ 12(g). Plaintiff was also moved to a less desirable office space and was no longer invited to exclusive marketing events or quarterly global creative meetings. See id. ¶ 12(j). The creative directors who were invited to such meetings were substantially younger than Plaintiff. Id.

Between Plaintiff's demotion and his termination, he observed that the Entity Defendants were hiring more "digital natives," employees in their 20s and 30s, pursuant to a company narrative of hiring younger people who were familiar with social media. Id. ¶ 12(h). Claypool referred to this company narrative on a number of occasions and was present when Plaintiff's employment was terminated. Id. Claypool also would say that "[a]s an agency, we need to be more knowledgeable and more digital focused." Id.

In or around February 2019, Lee Clow, Plaintiff's mentor and boss, announced he was retiring. Id. ¶ 13(a). Within two

months, Thorburn told Plaintiff that "they couldn't carry his salary anymore" and offered him a 50 percent pay cut or severance. Id. ¶ 13(b)-(c). Plaintiff was also told that the Entity Defendants could not support the salaries of two other employees, one in her 60s and another in his 50s. Id. ¶ 13(c). On about June 18, 2019, Milner met with Claypool who informed him that "they had looked around" and "didn't have anything for him, even at a reduced salary." Id. ¶ 13(d). Plaintiff responded that "It's starting to look and smell like age discrimination." Id. ¶ 13(e). Plaintiff alleges on information and belief that Riley and Ruhanen were involved in the termination of Plaintiff's employment. Id. ¶ 13(f).

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute . . . ." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). "The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that removal is proper." Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009). If a defendant fails to meet its burden of establishing the Court has subject matter jurisdiction, the suit is remanded. 28 U.S.C. § 1447(c).

## III. DISCUSSION

A.  **Procedural Objections**

   1.  **Operative Complaint**

Plaintiff argues that removal was procedurally improper because he filed his First Amended Complaint (FAC) on September 16, 2019, four days before Defendants removed the

case based on the original Complaint.  See Mot. at 3-4.  However, Defendants were not served with the FAC until September 25, 2019, after they had removed the matter.  See id. at 4.  The removal therefore was procedurally proper.[1]  See Noorazar v. BMW of N. Am., LLC, No. 18-CV-02472 W (JLB), 2019 WL 442477, at *2 (S.D. Cal. Feb. 5, 2019) ("[I]n California an amended complaint supersedes the original for the purpose of removal only when served upon the affected defendant."); Lewis v. QVC, Inc., No. SACV 17-0287-DOC (KESx), 2017 WL 1423703, at *3 (C.D. Cal. Apr. 20, 2017) ("Because Plaintiff did not serve notice of the FAC on Defendants until after [defendant] removed the action to the [Central] District of California, the operative complaint is Plaintiff's original Complaint.").

### 2. Failure to Comply with Local Rule 7-3

Defendants assert that although the parties met and conferred about Plaintiff's motion to remand, the substance of Plaintiff's motion, particularly challenges to the amount in controversy and citizenship of the Entity Defendants, was not discussed.  Dkt. 20 (Opp'n) at 5-6.  While the Court can generally refuse to consider a motion that fails to comply with the local rules, the Court has an independent duty to verify that subject matter jurisdiction exists.  Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 415 (9th Cir. 2018).  The Court must therefore consider the issue even if there were no motion.

### 3. Requests for Judicial Notice and Evidentiary Objections

Both parties filed requests for judicial notice.  Dkts. 12, 21, 26.  Because the Court does not rely on the facts requested to be

---

[1] The Court's conclusion does not depend on which complaint is currently operative.

4

judicially noticed, the requests are DENIED. Plaintiff objects to paragraphs 9-12 of the Streiff Declaration. Dkt. 23. Because the Court does not rely on the assertions made in those paragraphs, the Court declines to rule on the objections.

## B. Diversity Jurisdiction

Defendants removed this action on the basis of diversity jurisdiction. Dkt. 1 (Notice) ¶ 22. Federal courts have diversity jurisdiction where the amount in controversy exceeds $75,000[2] and the action is between citizens of different states. 28 U.S.C. §§ 1332, 1441.

The parties agree that Plaintiff is a citizen of California. The parties dispute whether certain Individual Defendants, who are citizens of California, were fraudulently joined, and whether certain Entity Defendants are citizens of California.[3]

Defendants concede that three of the Individual Defendants are citizens of California—Claypool, Riley, and Thorburn—but argue that their citizenship should be disregarded because they were fraudulently joined. The Complaint asserts two causes of action against the non-diverse Individual Defendants for Violation of FEHA – Hostile Work Environment Harassment on the Basis of Age (FEHA Harassment) and Intentional Infliction of Emotional Distress (IIED). The FAC adds two new causes of action against the non-diverse Individual Defendants: Defamation and Coerced Self-Defamation.

---

[2] Because the Court finds that there is not complete diversity, it need not address Plaintiff's frivolous argument that the amount in controversy is not met.

[3] The Court need not consider the latter because it finds that at least one of the resident Individual Defendants was not fraudulently joined.

5

For purposes of diversity jurisdiction, the Court "may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." Grancare, LLC v. Thrower, 889 F.3d 543, 548 (9th Cir. 2018). A non-diverse defendant is fraudulently joined "[i]f the plaintiff fails to state a cause of action against [the] resident defendant, and the failure is obvious according to the settled rules of the state." Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001) (first alteration in original) (quoting McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)). "[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent." Grancare, 889 F.3d at 549. Instead, "the standard is similar to the 'wholly insubstantial and frivolous' standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction." Id. In evaluating a claim of fraudulent joinder, "a federal court must find that a defendant was properly joined and remand the case to state court if there is a '*possibility* that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants.'" Id. (alteration in original) (emphasis in original) (quoting Hunter v. Philip Morris USA, 582 F.3d 1039, 1046 (9th Cir. 2009)). In this inquiry, "the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." Id. at 550.

First, Defendants argue that none of the Individual Defendants can be held liable for FEHA Harassment because "neither the Complaint nor the FAC contains any factual allegation that constitutes harassing conduct." Opp'n at 18.

FEHA makes it unlawful for "an employer . . . or any other person," to harass an employee because of age. Cal. Gov. Code § 12940(j)(1). Unlike discriminatory employment actions under FEHA, which are limited to "employers," harassment claims may be brought against any individual. Id. Under FEHA,

"harassment" includes "[v]erbal harassment, e.g., epithets, derogatory comments or slurs on a [discriminatory] basis" as well as physical harassment. Cal. Code Regs. Tit. 2 § 11019(b)(2). Actions such as "hiring or firing, job or project assignments, office or work station assignments, promotion or demotion, . . . the assignment or nonassignment of supervisory functions, deciding who will and who will not attend meetings, deciding who will be laid off, and the like, do not come within the meaning of harassment." Janken v. GM Hughes Elecs., 46 Cal. App. 4th 55, 64-65 (1996). "Harassment . . . consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management." Id. at 65. However, if "official employment actions . . . establish a widespread pattern of bias," and those actions "have a secondary effect of communicating a hostile message," the actions could constitute harassment. Roby v. McKesson Corp., 47 Cal. 4th 686, 709 (2009) (citing Miller v. Dep't. of Corrections, 36 Cal. 4th 446, 466 (2005)); see also Negherbon v. Wells Fargo Bank, No. 15-CV-02368-JCS, 2015 WL 6163570, at *6 (N.D. Cal. Oct. 21, 2015) (A "FEHA plaintiff may establish a supervisor's liability for harassment by providing evidence of hostile social interactions along with supplemental evidence of official employment actions that reinforce an underlying hostile message." (citing Roby, 47 Cal. 4th at 708-10)).

Defendants maintain that "all of [the Individual Defendants'] alleged wrongdoings only pertain to personnel management actions" that cannot support a FEHA Harassment claim. Opp'n at 19. It is true that most of the alleged wrongdoing would not constitute harassing conduct under California law. See, e.g., Compl. ¶¶ 12(e) (compensation); 12(f) (removal from Apple account); 12(g) (demotion); 12(g) (adjusting supervisory functions); 12(h) (hiring decisions); 12(j) (office assignment); 12(j) (exclusion from quarterly meetings). However, Plaintiff has also alleged that there was an "ongoing narrative within the company of the need to

hire '*digital natives*,' *i.e.*, younger people who were familiar with social media, a reference made on a number of occasions by defendant Claypool." Compl. ¶ 12(h). Further, Plaintiff alleges that during a meeting with Thorburn where Plaintiff was presented with the option of taking a pay cut or leaving, he was also informed that the Entity Defendants could not support the salaries of two other employees over 50. Id. ¶ 13(c). Such a "narrative," combined with the alleged discriminatory official actions taken, could possibly suffice to demonstrate harassment by Claypool or Thorburn through communication of a hostile message.[4] See Roby, 47 Cal. 4th at 708 (A "demeaning message . . . could give rise to an actionable hostile work environment."); see also Jansen v. Sys. Servs. of Am., Inc., No. 5:19-CV-00120 AB (SHKx), 2019 WL 1276191, at *3 (C.D. Cal. Mar. 18, 2019) (Plaintiff "establish[ed] a plausible harassment claim" where non-diverse defendant told "human resources that the older workers should be worked out of the system" and there was a practice of "employees getting assigned to [an inferior task] simply because they were older").

Defendants attempt to distinguish Roby by noting that "the plaintiff there actually alleged actions that constituted harassing conduct," including "demeaning comments" and "demeaning facial expressions and gestures," as well as "disparate treatment . . . in handing out small gifts." Opp'n at 21 (quoting Roby, 47 Cal. 4th at 709). However, even if Roby is distinguishable, it did not foreclose the possibility that official employment actions, including the "shunning of [plaintiff] during staff meetings," could form the

---

[4] Because there is a possible FEHA harassment claim against Claypool and Thorburn, the Court need not address whether there is a possible claim against Riley.

8

basis for a harassment claim if the effect was a hostile message. See 47 Cal. 4th at 709.

Defendants also claim that even if such conduct constituted harassment, it was "neither severe nor pervasive as a matter of law." Opp'n at 19. However, under California law, even one instance of harassment can be sufficient. Doe v. Wells Fargo Bank, N.A., No. CV 19-5586-GW-PLAx, 2019 WL 3942963, at *6 (C.D. Cal. Aug. 19, 2019) (rejecting claim of fraudulent joinder where there was only one non-personnel management action—the comment, "I have good news for you. You're gonna want to suck my dick."). Further, Plaintiff alleges the comments at issue were made "on a number of occasions" and that the "digital native narrative" was "ongoing." Compl. ¶ 12(h). Defendants maintain that Plaintiff has not demonstrated the requisite "unreasonabl[e] interfer[ence] with [his] work performance or creat[ion] [of] an intimidating, hostile, or offensive working environment." Opp'n at 20 (quoting Cal. Gov. Code § 12923(b)). To the extent that is true, such failures could possibly be cured by amendment.

While these allegations may not ultimately suffice, their failure is not "obvious according to the settled rules of the state," Morris, 236 F.3d at 1067, or impossible to be cured by amendment. Hunter, 582 F.3d at 1046. Because there is at least a possibility a state court would find Claypool's or Thorburn's conduct to constitute harassment, Defendants have not satisfied their burden of showing fraudulent joinder.[5] Diversity jurisdiction did not exist at the time of removal.

---

[5] The Court therefore need not reach the parties' arguments regarding the IIED claim, or the newly added defamation claims.

9

## IV.  CONCLUSION

The motion to remand is GRANTED.  The requests for judicial notice are DENIED.  The case is REMANDED to the Superior Court of California, County of Los Angeles.

   IT IS SO ORDERED.


Date: October 30, 2019                _____
                                      Dale S. Fischer
                                      United States District Judge